Craig C. Marchiando (SBN 283829)
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Tel: (757) 930-3660
Fax: (757) 257-3450
Email@Email.com
craig@clalegal.com
*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
## Southern Division

| | |
|---|---|
| JOHNNY M. GIBBS,<br><br>Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>Defendant. | Case No.: _____<br><br>**PLAINTIFF'S COMPLAINT FOR FCRA VIOLATIONS**<br><br>**JURY TRIAL DEMANDED** |

COMES NOW the Plaintiff, JOHNNY M. GIBBS, by and through the undersigned Counsel, and sues Defendant, EXPERIAN INFORMATION SOLUTIONS, INC. Plaintiff respectfully alleges violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681x ("FCRA") and the California Consumer Credit Reporting Agencies Act, California Civil Code §§ 1785.1–1785.36 ("CCRAA").

**PRELIMINARY STATEMENT**

1. This is an action for actual damages, punitive damages, costs, and attorneys' fees brought pursuant to the FCRA and CCRAA.

2. Experian in one of the three major consumer reporting agencies ("CRAs") in the United States.

3. CRAs that create and sell consumer reports are charged with using reasonable procedures designed to ensure the maximum possible accuracy of the

information they report. It is not enough for them to simply parrot information they receive from entities that furnish them information, particularly where a consumer makes a dispute about information the CRAs are reporting.

4. Experian saddle Plaintiff with one of the worst credit-reporting errors—reporting him as deceased when she was not.

5. Under those circumstances, a consumer's credit is paralyzed because the CRAs and credit grantors believe a fraudster is attempting to obtain credit using the identifying information of someone who is deceased.

6. Correcting this error is particularly arduous, because CRAs and credit grantors never believe the consumer disputing the inaccuracy. They all believe they are dealing with a fraudster, despite other evidence in their files that the person is indeed alive, such as that the person is actively paying bills.

7. Statutes like the FCRA and CCRAA therefore provide consumers with the only mechanism by which they can force CRAs to correct errors and report accurate information about them.

## JURISDICTION AND VENUE

8. The jurisdiction for this Court is conferred by 15 U.S.C. § 1681p and 28 U.S.C. § 1367.

## PARTIES

9. Plaintiff is a natural person and resident of Barbour County, Alabama during the relevant time. She is a "consumer" as defined by 15 U.S.C. § 1681a(c).

10. Experian conducts business in the State of California through its registered agent, CT Corporation System located at 818 West Seventh Street, Suite 930, Los Angeles, California 90017. Experian's headquarters are located within this District.

11. Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Experian is also a "consumer credit reporting agency" as defined in CAL. CIV. CODE ANN. § 1785.3(d). Experian is regularly engaged in the business of

assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer and consumer credit reports, as defined in 15 U.S.C. § 1681a(d) and CAL. CIV. CODE ANN. § 1785.3(d), to third parties.

12. Experian disburses such reports to third parties under contract for monetary compensation.

**FACTUAL ALLEGATIONS**

13. Plaintiff is a natural person who had a credit account with ADS/Comenity/Victoria Secret beginning in December 2017.

14. In or about January 2020, Plaintiff communicated to Comenity Bank that he wanted to close the Victoria Secret account.

15. In or about January 2020, Comenity Bank was somehow misinformed that Plaintiff was deceased since 2001 and began reporting Plaintiff to Experian as "deceased."

16. Plaintiff learned that Experian was reporting her as deceased. Plaintiff spoke to a credit repair service, Lexington Law, to attempt to fix the mistake. Plaintiff paid over $40 every month for the help promised by Lexington Law to fix her credit report.

17. On February 18, 2020, Lexington Law disputed the inaccurate deceased notation of Plaintiff.

```
Capid=512447015    Stamp Date=02/18/2020   Lexington law Batch Dispute    Automation Dispute
    Entry Date=02/18/2020
Agent Id=BD000001           Agent Name: Dispute Automation
Gibbs,Johnny       SSN=
                                                                                   Page 5
```

18. Plaintiff never received a response from Experian. Neither did Lexington Law. Experian continued to report Plaintiff as a deceased.

19. On February 20, 2020, Plaintiff attempted to secure a mortgage loan from BB&T. Plaintiff was denied because Experian reported Plaintiff as deceased.

20. On April 22, 2020, Plaintiff attempted to secure credit for an auto loan from GLOBAL LENDING SERVICES. Experian reported Plaintiff as deceased, and Plaintiff was denied the loan.

21. On April 22, 2020, Plaintiff attempted to secure credit for an auto loan from CAPITAL ONE AUTO FINANCE. Experian reported Plaintiff as deceased, and Plaintiff was denied the loan.

22. On May 5, 2020, Plaintiff attempted to secure credit for an auto loan from OPELIKA CHRYSLER DODGE J. Experian reported Plaintiff as deceased, and Plaintiff was denied the loan.

23. In May 2020, Plaintiff communicated with Experian and disputed the deceased notation.

24. On May 15, 2020, Experian Mailed Plaintiff Dispute Results #1862-0280-02. Experian indicated to Plaintiff that the ADS/Comenity count had been updated from "deceased" to "individual."

| ADS/COMENITY/VICTORIA | | ADS/COMENITY/VICTORIA | |
|---|---|---|---|
| Date opened<br>Jul 2017<br>Address ID #<br>0626101802<br>Type<br>Charge Card<br>Responsibility<br>Deceased | First<br>Apr 2<br>Term<br>Not r<br>Mont<br>Not re<br>Cred<br>amou<br>$140 | Date opened<br>Jul 2017<br>Address ID #<br>0626101802<br>Type<br>Charge Card<br>Responsibility<br>Individual | First<br>Apr 20<br>Term:<br>Not re<br>Mont<br>Not re<br>Credi<br>amou<br>$140 |

25. Inexplicably, Experian re-inserted the deceased notation. Plaintiff was devastated to know that Experian was again reporting her as dead.

26. On July 27, 2020, Plaintiff attempted to secure credit from COMENITY/SAMS CLUB. Experian reported Plaintiff as deceased and Plaintiff was denied the loan.

27. Plaintiff communicated with Experian and requested her Credit Report. On August 4, 2020, Experian mailed Plaintiff her credit report (#2272-6143-84).

1  The first tradeline was again ADS/Comenity/Victoria secret with the "Deceased"
2  entry.
3      28.   Experian, in violation of the FCRA, failed to notify Plaintiff that it was
4  re-inserting the previous status of deceased.
5      29.   Experian mailed Plaintiff her credit report on August 4, 2020, despite
6  reporting her as dead.
7      30.   While the entire world was going through a pandemic, and daily news
8  reported the amount of people dead each day, Experian chose to again report Plaintiff
9  as deceased.
10     31.   This reporting is particularly egregious given Plaintiff's earlier disputes
11 and Experian's correction of the error.
12     32.   Experian also had additional information in its files about Plaintiff
13 indicating that she was alive, such as that she was regularly paying her bills.
14     33.   Typically, only the living pay bills.
15     34.   On August 8, 2020, Plaintiff again communicated with Experian,
16 disputing her "deceased" designation.
17     35.   Experian's policies and procedures mandate that a consumer must
18 prove that they are who they are when disputing a tradeline. Experian believed
19 Plaintiff was in fact Plaintiff when she disputed, and Experian sent Comenity bank
20 an ACDV on August 7, 2020.
21     36.   Experian's ACDV to Comenity bank indicated [Code 120 - <u>Consumer</u>
22 <u>disputed deceased ECOA</u>.]
23     37.   Experian failed to do any independent investigation, despite knowing
24 Plaintiff was alive.
25     38.   While the August 7, 2020, dispute was pending, on August 18, 2020,
26 Lexington Law again sent another written dispute about the deceased account.

```
Capid=931926787   Stamp Date=08/18/2020  Lexington law Batch Dispute   Automation Dispute
                  Entry Date=08/18/2020
Agent Id=BD000001             Agent Name: Dispute Automation
```

5

PLAINTIFF'S COMPLAINT

39. On August 11, 2020, Plaintiff attempted to secure credit from CLARITY/ALWAYS MONEY. Experian reported Plaintiff as deceased, and Plaintiff was denied the loan.

40. On August 27, 2020, Experian sent Plaintiff her dispute results (#0259-7443-76). Experian indicated that the account was verified and updated. Experian provided Plaintiff an image of the account "Before" and "After." Both images included the "Deceased" designation.

41. Plaintiff felt helpless as Experian refused to believe she was alive. Experian continued to recklessly report Plaintiff deceased.

42. On October 28, 2020, Plaintiff attempted to secure credit for an auto loan from SANTANDER/CHRYSLER CAP. Experian reported Plaintiff as deceased, and Plaintiff was denied the loan.

43. On October 28, 2020, Plaintiff attempted to secure credit for an auto loan from FORD MOTOR COMPANY CREDIT CORP. Experian reported Plaintiff as deceased, and Plaintiff was denied the loan.

44. On March 20, 2021, Experian mailed Plaintiff a notification that Experian had added an "Active-Duty Alert" to her credit report. Experian was continuing to report Plaintiff as deceased during the updated alert.

45. On March 28, 2021, Experian mailed Plaintiff another notification that Experian had added an "Active-Duty Alert" to her credit report. Experian was continuing to report Plaintiff as deceased during the updated alert.

46. On March 30, 2021, while reporting Plaintiff as deceased, Experian mailed Plaintiff Report #2028-8468-40 which included a Personal Statement: "You've given us the following statement to include every time a company asks us for your credit report: 'Active Military Duty Alert.'"

47. As Experian is plainly aware from its records, Plaintiff had already turned *70 years old* when she received this letter.

48. On April 14, 2021, Experian received another dispute on behalf of Plaintiff from CreditRepair.com.

49. Again, Experian failed to respond to the dispute to Plaintiff or CreditRepair.com.

50. On April 21, 2021, Plaintiff communicated with Experian and disputed an Enhanced Recovery account. Experian processed the dispute and verified the account to Plaintiff. Experian was also reporting Plaintiff as deceased during the time of this dispute.

51. On April 22, 2021, Experian mailed Plaintiff information verifying the Enhanced account despite reporting Plaintiff as deceased within that same report.

52. Experian received a mail dispute from Plaintiff on or about May 26, 2021. The dispute was processed on June 1, 2021.

53. Experian mailed Plaintiff Dispute Results (#2306-9018-35) indicating, "DISPUTED ITEM NOT LISTED ON CREDIT REPORT." Meanwhile, the second tradeline is again reporting Plaintiff as deceased.

54. Experian also mailed a separate letter to Plaintiff on that same day indicating, "In some instances we were able to determine whether the dispute information should be changed or deleted without having to contact the furnisher or the vendor." Experian continued to report the Plaintiff as deceased after June 1, 2021.

55. On June 8, 2021, Plaintiff attempted to secure credit from US SM BUS AMIN ODA. Experian reported Plaintiff as deceased, and Plaintiff was denied the loan.

56. On July 8, 2021, Experian again received a mail dispute from Plaintiff about the deceased entry, Agent Id= 0054w00000adhbyaab processed the dispute for Experian.

57. On July 13, 2021, Experian again mailed Plaintiff Dispute Results (#2580-5327-83) indicating, "DISPUTED ITEM NOT LISTED ON CREDIT REPORT." Meanwhile, the second tradeline is *again* reporting Plaintiff as deceased.

58. On July 28, 2021, upon Plaintiff's request, Experian again mailed Plaintiff a Credit Report (#2448-0892-21) which included a Personal Statement: "You're given us the following statement to include every time a company asks us for your credit report: 'Active Military Duty Alert.'" This message indicating active-military-duty status, again, to a 70-year-old.

59. The first tradeline was the ADS/Comenity reflecting Plaintiff as deceased.

60. On November 6, 2021, Plaintiff attempted to obtains a Sam's Club account. Experian reported Plaintiff as deceased, and she was unable to secure credit.

61. On November 23, 2021, Plaintiff attempted to secure credit for an auto loan from CDK/DYER KIA. Experian reported Plaintiff as deceased and Plaintiff was denied the loan.

62. On November 23, 2021, Plaintiff attempted to secure credit for an auto loan from NCCINC/JARRET GORDON FO. Experian reported Plaintiff as deceased, and Plaintiff was denied the is this loan.

63. On December 1, 2021, Plaintiff again requested her Experian credit report. Experian mailed her report #3134-3080-94. Experian sent her the report despite continuing to report Plaintiff as deceased.

64. On January 8, 2022, Experian received a certified USPS Mail dispute from Plaintiff. Plaintiff's dispute letters included images of proof of life. Plaintiff explained that she had repeatedly applied for credit and had been denied because of Experian's misrepresentation that she was dead.

65. When Experian received the dispute letter with all the images and proof of life, *Experian again* failed to conduct any investigation. Instead, it generated an ACDV to ADS/Comenity while continuing to report Plaintiff as deceased.

66. Experian waited until February 2022 when ADS/Comenity responded to Experian's ACDV to "DELETE" the account.

67. Experian finally removed the deceased reporting in February 2022.

68. That most-current Experian report also has entries indicating Plaintiff paid bills to creditors during the time Experian has been telling others she was dead.

69. So while Experian knew Plaintiff was paying her bills, it sold reports about her to potential creditors while simultaneously reporting her as deceased. Experian received multiple dispute letters showing Plaintiff was not deceased, yet Experian continued to report that Plaintiff deceased.

70. Despite the verbal and written disputes and information in Experian's own files showing Plaintiff was alive, paying bills, and otherwise using her credit, Experian failed correct the obvious error.

71. As a result of Defendant's conduct, Plaintiff has suffered actual damages in the form of lost loan and credit opportunities, credit defamation, personal defamation and emotional distress.

72. In particular, as described above, Plaintiff has been denied numerous opportunities for credit.

73. The FCRA requires that Defendant Experian must follow procedures which assure that the reports they sell meet the standard of "maximum possible accuracy." 15 U.S.C. § 1681e(b).

74. The FCRA requires that Defendant Experian must maintain reasonable procedures to assure that reports are sold only for legitimate "permissible purposes." 15 U.S.C. §§ 1681e(a) & 1681b.

75. Experian does not request or require a death certificate or any other proof from any data source which advises that a consumer is deceased, showing that the consumer is, in fact, deceased before placing a "deceased" notation on that consumer's report.

76. Experian does not independently verify with any source that a consumer is, in fact, deceased before placing a "deceased" notation on that consumer's report.

77. Indeed, Experian employs no procedures at all which assure that a consumer with a "deceased" mark on his/her report is, in fact, deceased before placing the "deceased" mark on that consumer's report and selling that report.

78. Such a policy is unreasonable for a number of reasons, not the least of which that Experian nearly always possesses other information—such as that the consumer is paying her bills or creditors are accessing the consumer's information at Experian for purposes of making a present decision about granting the consumer credit—showing that the consumer is indeed alive.

79. Even in instances where other data on the face of the consumer's report indicates that she is not deceased, Experian employs no procedures which assure that a consumer with a "deceased" notation on her report is, in fact, deceased before placing the "deceased" mark on that consumer's report.

80. Once a "deceased" mark is placed upon a consumer's report, Experian will not calculate and will not provide a credit score for that consumer.

81. Nevertheless, Defendant Experian routinely sells to third parties credit reports for persons with a "deceased" mark on their reports with no credit score, despite a request by the purchaser of the report for a credit score for that consumer.

82. In other words, Experian chooses to make money selling reports that it knows will result in a denial of credit because it contains the "deceased" notation, and despite other evidence in Experian's records that the consumer is not deceased.

83. Upon Defendant Experian's reports with a "deceased" mark sold to third parties, Experian never calculate or provide a credit score for that consumer.

84. Defendant Experian knows that many third-party credit issuers require a credit score in order to process a given credit application.

10
PLAINTIFF'S COMPLAINT

85. Defendant Experian knows that consumers without credit scores are unable to secure any credit from most credit issuers.

86. Defendant Experian knows that living consumers are turned down for credit specifically because Defendant is reporting them as "deceased" and without a credit score.

87. Experian is therefore aware that reporting a consumer as deceased is devastating to the consumer because it effectively halts the consumer's ability to engage in the credit market. Virtually all creditors view the deceased moniker as an indicator of fraud and, after seeing it attached to the file of someone who applies for credit, will refuse to grant credit to that consumer.

88. Experian has been on notice for years through consumer disputes and lawsuits that living consumers are turned down for credit specifically because Defendant Experian is reporting them as "deceased" and without a credit score.

89. Experian has received and documented thousands of disputes from consumers complaining that their Trans Union credit reports have them erroneously marked as "deceased."

90. Experian knows that thousands of consumers are erroneously marked as "deceased" on their Experian credit reports via an erroneous furnishing of the "X" code, but said consumers are not on the Social Security Administration's Death Master File and are, in fact, alive.

91. Nevertheless, Experian employs no procedures which assure that a consumer marked as "deceased" on Experian's reports are, in fact, deceased.

92. Plaintiff's disputes to Experian bear out this reality. In her final fit of frustration, Plaintiff disputed to Experian and included with that disputes photos of her holding the newspaper dated the day she mailed her dispute as well as government-issued identifications with legible pictures of her, conclusively proving she was alive.

93. Experian also does not employ any procedures to limit or stop the furnishing of reports to third parties for consumers which it has marked as "deceased" under any circumstances.

94. So while Plaintiff was disputing to Experian that its reporting of her as deceased was inaccurate, Experian perpetuates the harm by continuing to issue reports about her saying she is dead.

95. This is purely for purposes of profit, as for years after a consumer's actual death, Experian will continue to sell for profit credit reports about that consumer even though there is rarely a genuine reason for Experian to sell such a report.

96. Experian will only remove a deceased consumer's file from its credit reporting database when it is no longer valuable to third parties – meaning that nobody is continuing to buy those reports.

97. Experian charges third parties a fee for reports with a mark that a consumer is deceased ("reports on the deceased"), just as it would for any other report.

98. Experian profits from the sale of reports on the deceased, so it has little incentive to change its processes.

99. Experian has in its credit-reporting database hundreds of thousands of "deceased" remarks corresponding to distinct credit files for individual consumers that it has marked as "deceased."

100. Experian knows that truly deceased consumers do not apply for credit.

101. Experian knows that the credit information and reports of truly deceased persons are used by criminals to commit identity theft or credit fraud. Indeed, identity theft using the personal identifying information of deceased consumers is known to Experian to be a common and major source of identity theft.

102. Experian knows that identity theft and credit fraud are serious and widespread problems in society.

103. Experian warns the relatives of truly deceased consumers that identity theft can be committed using the credit reports and information of the deceased and requires relatives to provide a death certificate or executorship papers, among other proofs, before accessing the deceased consumer's credit information or report.

104. Experian has no similar death certificate, executorship paper, or any other proof requirements for their data sources which report a consumer as deceased or for the buyers of their reports which access the purportedly deceased consumer's information.

105. Indeed, Experian sells reports of the deceased to third parties in an automated fashion and without any specific or general certification that could reasonably explain a "permissible purpose" for purchasing or using a (supposedly) deceased consumer's credit history and/or report.

106. For consumers who are deceased, there exists no permissible purpose under the FCRA for Experian to ever sell their credit reports, absent a court order.

107. Experian knows that such reports contain a vast amount of personal identifying and credit account information on the supposedly deceased consumer, information that can be used to commit identity theft or for other fraudulent purposes.

108. At all times pertinent hereto, Experian was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of Experian.

109. At all times pertinent hereto, the conduct of Experian, as well as that of its agents, servants and/or employees, was intentional, willful, reckless, and in grossly negligent disregard for federal law and the rights of the Plaintiff.

## CAUSES OF ACTION

### COUNT I
### (Violations of § 1681e(b) of the FCRA)

110. The Plaintiff re-alleges and incorporates 1 through 109 as if fully set out herein.

111. Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning the Plaintiff. Despite Experian knowing or at least having reason to know Plaintiff was alive, it published her credit report to creditors indicating Plaintiff was deceased.

112. Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files when it allowed a "deceased" entry into Plaintiff's file, then removed the "deceased" entry and changed it to individual. Inexplicably, shortly after, Experian re-inserted the "deceased" ECOA without notifying the Plaintiff.

113. Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files by answering Plaintiff's requests for her credit report when reporting her as deceased, by selling her report to potential creditors, and by updating military "Active Alerts"; all while reporting Plaintiff as deceased.

114. As a result of this conduct, action and inaction of Experian, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from credit; and mental and emotional pain stemming from the anguish, humiliation, and embarrassment of credit denials.

115. Experian's conduct, action and inaction were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined

14

by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling Plaintiffs to recover actual damages under 15 U.S.C. § 1681o.

116. Plaintiffs are entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT II
### (Violations of § 1681i of the FCRA)

117. Plaintiff re-alleges and incorporates paragraphs 1 through 109 above as if fully set out herein.

118. Experian violated 15 U.S.C. § 1681i by failing to delete inaccurate information in the Plaintiff's credit file after receiving notice of such inaccuracies, by failing to conduct a lawful reinvestigation, by failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file, and by relying upon verification from a source it has to know is unreliable; particularly when Plaintiff provided and Experian possessed sufficient information to contradict the obvious inaccuracies that she was alive in Experian's reporting.

119. Experian's conduct, action, and inaction were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, if Experian was negligent, Plaintiff is entitled to recover under 15 U.S.C. § 1681o. Experian took no independent action to investigate Plaintiff's disputes. Experian chose to ignore the additional information provided and the clearly indicated erroneous conclusion that Plaintiff is deceased.

120. Plaintiff provided a copy of her Driver's License and current picture of her holding that day's newspaper, which should have provided ample reason for Experian to delete and update the erroneous notation that Plaintiff was deceased.

121. Experian deleted the deceased and re-inserted the deceased notation after Plaintiff's disputes.

122. Experian's conduct, action and inaction were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

Plaintiff is entitled to recover costs and attorneys' fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

### COUNT III
### (Violations of § 1785.16 of the CCRAA)

123. Plaintiff re-alleges and fully incorporates paragraphs 1 through 109 above as if fully stated herein.

124. At all times relevant to this action, Experian is subject to and must abide by the law of the State of California, including, without limitation, California Civil Code § 1785.16 (the "CCRAA").

125. The foregoing acts and omissions constitute numerous and multiple violations of the CCRAA.

126. Experian violated § 1785.16 by failing to reinvestigate information disputed by Plaintiff as clearly indicated within the disputes Experian received. Experian was provided with and itself possessed information clearly indicating an error on the reported information on Plaintiff's credit report; however, Experian failed to acknowledge, investigate, update, or delete the erroneous accounts or inaccurate personal information reported.

127. As a result of each and every negligent violation of the CCRAA, Plaintiff is entitled to damages as the Court may allow pursuant to Cal. Civ. Code § 1785.16(a).

128. As a result of each and every willful violation of the CCRAA, Plaintiff is entitled to damages as the court pay allow pursuant to Cal. Civ. Code § 1785.31(a)(2) against Experian, including punitive damages of $100 to $5,000 per willful violation.

129. Plaintiff is also entitled to injunctive relief against Experian pursuant to Cal. Civ. Code § 1785.31(b).

**PRAYER FOR RELIEF**

Plaintiff therefore respectfully requests that this Court:

(1) Award Plaintiff actual, statutory, and punitive damages for Experian's violations of the FCRA;

(2) Award Plaintiff injunctive relief for Experian's violations of the CCRAA;

(3) Award Plaintiff attorneys' fees and costs under the FCRA and CCRAA;

(4) Award Plaintiff post judgment interest; and

(5) Award all other relief, including equitable relief, as the Court deems appropriate.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,

**Johnny M Gibbs,**

　　*/s/ Craig C. Marchiando*
Craig C. Marchiando (SBN 283829)
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Tel: (757) 930-3660
Fax: (757) 257-3450
craig@clalegal.com

***Attorney for Plaintiff***